RIMLING, Appellant, vs. SCHERPER and others, Respondents.

*December 10, 1931—January 12, 1932.*

534

536

538

*Geo. J. Graebner* and *Wallace H. Hahn,* both of Milwaukee, for the appellant.

*I. B. Padway* of Milwaukee, for the cross-appellants Scherper and Grifka.

For the respondent Dell Realty Company there was a brief by *Emil Hersh* and *Herbert Morse,* both of Milwaukee, and oral argument by *Mr. Hersh.*

NELSON, J.    The plaintiff's appeal from the judgment dismissing the complaint as to Dell Realty Company will

first be considered. The plaintiff contends that it was error to dismiss the complaint as to the company because, by virtue of the contract entered into with Grifka on the 15th day of October, 1928, both Grifka and Scherper became the agents of the company and consequently bound it by the false representations made to the plaintiff.

It becomes important to decide whether the trial court was right in concluding that the contract dated October 15th was not an agency contract but was in fact an option. While this contract is rather inartistically drawn, it seems clear that it was intended merely as an option as testified to by the parties to it, as it was specifically designated by its own terms, as it was described to Rimling by the defendants in their negotiations with him, and as all the surrounding circumstances lend explanation to it. The only circumstances which militate against the conclusions of the trial court are (1) the language of the contract dated October 17th, in which the defendants describe themselves as "agents of Dell Realty Company," and (2) knowledge of the officers of the company that the defendants were negotiating with the plaintiff for the purchase of the building. Certainly neither of these circumstances is very persuasive, much less conclusive, as to the nature of the instrument. It must be recalled that neither Scherper nor Grifka had any express authority to enter into a contract with the plaintiff; that the company had no knowledge or information as to their contract with the plaintiff or that either Scherper or Grifka had in any way held himself out as an agent of the company, or that their contract with Rimling was in any manner inconsistent with the contract considered as an option.

An agency contract in fact does not become an option contract merely by a recitation therein to that effect. *Shepard v. Pabst,* 149 Wis. 35, 135 N. W. 158. We find nothing in the terms, provisions, or purposes of this contract which compels the conclusion that it was an agency contract

rather than a mere option. The fact that it was deemed necessary by Grifka, no doubt acting in concert with Scherper, to have it extended for a period of five days at a time when Scherper and Grifka had already entered into the contract with the plaintiff, rather conclusively shows the construction which the parties to it placed upon it. If Scherper and Grifka had regarded it as an agency contract there would have been no occasion for having it extended at a time when the plaintiff as a customer had been found and was bound to buy under the terms of a written contract already entered into. Had they been acting as agents for the realty company rather than as individuals under the claimed option, it is not perceived just why they would deem it necessary either to have Grifka's contract extended or to enter into the purchase contract with the company under date of October 27th. The only possible explanation which could be suggested under these circumstances is that the company and the defendants conspired together to defraud the plaintiff with the deliberate purpose and intention of covering up the real relation of the company to the transaction. Such a theory finds no support in the evidence. Nor is there any conduct on the part of the company or its officers which would justify, much less impel, the conclusion that the plaintiff had a right to act relying on the apparent or ostensible agency of the defendants, with the exception of the single circumstance that Hartsman looked over plaintiff's stock pursuant to request and for the purpose of determining whether the company might be willing to take it over on some basis. There is nothing in the record to show that the company acted in a manner which misled the plaintiff to his prejudice or which should estop it from asserting its true relationship to the deal. 

If the plaintiff had any doubts as to the capacity in which the defendants were acting prior to October 27th, such

doubts should have been dispelled when he received the following letter from the company's attorneys:

"We write you as the attorneys for Dell Realty Company, at the request of Henry Grifka and Sam Scherper.

"You are advised that Messrs. Grifka and Scherper have entered into a contract with the Dell Realty Company for the purchase of the real estate known and numbered as 367–371 Newton avenue.

"This letter is for the purpose of advising you of their entering into the contract for the purchase of said real estate with the Dell Realty Company, and we are advised is wanted by you for the purpose of satisfying you with reference to the sale of the stock of hardware and fixtures which Mr. Grifka made and possession of which is given to his purchaser on October 29, 1928."

This letter disclosed the true relationship between the company and defendants and informed the plaintiff as to the nature of the deal with them. The evidence further reveals that nothing was done or omitted by the company which is not perfectly consistent with its claim that the contract with Grifka was an option to sell and that neither Scherper nor Grifka was its agent. Since the trial court construed this agreement to be an option, after careful consideration of its terms and after having seen and heard the witnesses produced at the trial and after being fully informed as to all of the surrounding circumstances, we do not perceive how, under the established law, the findings of the trial court may be disturbed. Construction of instruments by trial courts is not ordinarily disturbed unless against the great weight of the evidence. *Felton v. Stacey,* 175 Wis. 471, 185 N. W. 536.

On the motion of the defendants for a review, the following contentions are made by them: The court erred (1) in finding that actionable fraud was practiced upon the plaintiff by them; (2) in finding that the plaintiff relied upon any misrepresentations made; (3) in not dismissing

the complaint as to them; (4.) in not holding that the plaintiff was guilty of laches; (5) in assessing damages against them; and (6) in dismissing defendants' counterclaim for their profits which they would have earned had the plaintiff performed his contract.

Defendants' first contention involves a direct attack upon the court's finding No. 21 hereinbefore recited. The substance of the court's finding is that the defendants represented to the plaintiff that he was purchasing the two apartments at the actual cost to the owners thereof for the reason that the owners were not on friendly terms and desired to liquidate the business. The contention that such representations are not material and that actionable fraud cannot be based thereon seems to us to merit little consideration. A representation as to value under certain circumstances may constitute actionable fraud. *Heal v. Stoll,* 176 Wis. 137, 145, 185 N. W. 242. A false representation as to what another prospective buyer would pay may also constitute actionable fraud. *Miley v. Heaney,* 168 Wis. 58, 169 N. W. 64. A false representation that an owner asked a certain price and would not take less may be actionable if it induces a sale at a price greatly in excess of the owner's actual price. *Booker v. Pelkey,* 173 Wis. 24, 180 N. W. 132. We do not presently conceive of a representation which is more strongly calculated to induce a purchaser to buy property than one of this nature. It seems very clear that when property is offered at a price represented to be its actual cost, especially when it is new, such a representation constitutes a strong and persuasive inducement to buy. No case involving a representation as to the cost of a piece of property has been cited, but we have no hesitancy in holding such a representation to be material and actionable when false, if in fact relied on.

The further contention that the plaintiff had no right to

rely on such a representation but should have made diligent inquiry so as to ascertain for himself what the cost of the buildings was, seems not to require extensive consideration. While the plaintiff knew that the buildings belonged to the company, it must be remembered that he was told that the reason the buildings were being sold at cost was because the officers of the company were not on friendly terms and transacted no business except through their attorneys. These representations were well calculated to induce any one intending to purchase not to make direct inquiry of the owners. One so circumstanced who is desirous of buying a piece of property at cost cannot be held as a matter of law in duty bound to make inquiry of the real owners. Then, too, it appears that the plaintiff had every reason to consider that Scherper was his agent and in duty bound to look after his interests. It will be recalled that on October 8th the plaintiff had in writing employed Scherper to dispose of his stock and furniture for which he agreed to pay $1,000, and that Scherper, in the presence of Grifka, represented to him that all the former was making was $250 because he had to divide the $1,000 commission four ways. We think the finding of the trial court to the effect that Rimling relied on the representations and had a right so to do cannot be disturbed.

The evidence warrants the conclusion that the plaintiff did not discover the falsity of the representations until some time in November. At that time his stock of hardware had been disposed of, the $8,900 proceeds thereof credited on his contract with the defendants and by the latter paid over to the company on their contract with it. The purchaser of the stock of hardware was in possession, it having been turned over to him on October 29th. This action was commenced on the 23d day of December. We can see in these circumstances nothing which compels a finding of laches.

The trial court assessed the plaintiff's damages at the sum of $23,716.58. The damages were no doubt computed as follows:

Value of stock of merchandise as inventoried...$20,716 58
Down payment on contract.................    500 00
Furniture and fixtures at their trade-in price...  2,500 00

Defendants claim that since the stock of merchandise sold for only about $8,900, or in other words for forty-five cents on the dollar, the best price which defendants could obtain therefor, the actual amount received by them should measure the amount of plaintiff's damages arising from the loss of his stock. Were the testimony undisputed that the stock was worth only forty-five cents on the dollar there would be much force in this contention. It appears, however, that there was testimony to the effect that the market value of plaintiff's stock, retained in its old stand, was its inventory value. We conclude as to this item of damages that the finding of the court, considering all of the testimony, cannot be said to be against the great weight and clear preponderance of the evidence. As to the $500 down payment there can be no controversy. As to the $2,500 item of damages arising from the sale of the furniture and fixtures, it appears that while the action was pending it was stipulated between the parties that they might be sold to the plaintiff's father-in-law for $575 and the money deposited with the clerk of the court. Under this stipulation it seems clear that the $575 was, by the parties to the action, substituted as and for the furniture and fixtures. This money was thereafter paid over to the plaintiff. It appears, therefore, that the court was in error in including in its computation the sum of $2,500. Since the plaintiff stipulated that the property be sold for $575, after the contract was rescinded by the bringing of this action, and received said sum, we are of the opinion that the plaintiff is not now

entitled in equity to any additional damages arising from the sale of the furniture and fixtures. The judgment should be reduced in the amount of $2,500 and, as so modified, affirmed.

*By the Court.*—Judgment reduced in the amount of $2,500 and, as so modified, it is affirmed.

FAIRCHILD, J., took no part.