Sylvia M. CRAWFORD, by June E. Goodyear, her guardian, Plaintiff-Respondent,

v.

CARE CONCEPTS, INC., d/b/a/ Premier Care and St. Paul Fire & Marine Insurance Co., Defendants-Appellants-Petitioners,

Donna SHALALA, Secretary of the United States Department of Health & Human Services, Defendant.

Supreme Court

*No. 99–0863. Oral argument November 6, 2000.—Decided May 15, 2001.*

2001 WI 45

(Also reported in 625 N.W.2d 876.)

For the defendants-appellants-petitioners there were briefs by *Michael J. Hogan, R. Scott Ritter* and *Hogan, Ritter, Minix & Pasholk*, Milwaukee, and oral argument by *Michael J. Hogan*.

For the plaintiff-respondent there was a brief by *Philip R. Schomber* and *O'Neal, Forbeck, Elliott & Monahan, S.C.*, Beloit, and oral argument by *Philip R. Schomber*.

¶ 1.   WILLIAM A. BABLITCH, J.   Care Concepts, the owner of a nursing home in Beloit, Wisconsin, petitions this court to review a decision of the court of appeals.[1] The court of appeals held that information, including records and reports, relating to a nonparty's assaultive or disruptive conduct was not protected by the physician-patient privilege, Wis. Stat. § 905.04 (1997–98).[2] We agree. Information concerning assaultive or disruptive behavior by a patient and contained in medical records is not confidential, as that term is defined in the statutes. As a result, the privilege does not bar Care Concepts from responding to Crawford's discovery requests.

¶ 2.   The court of appeals further concluded that Wis. Stat. § 146.82 does not prohibit Care Concepts from responding to Crawford's discovery demands. Section 146.82 generally bars the release of patient health care records to unauthorized persons without the patient's consent; information may be released without informed consent pursuant to certain statutorily enumerated circumstances. One of these statutorily

---

[1] *Crawford v. Care Concepts, Inc.*, 2000 WI App 59, 233 Wis. 2d 609, 608 N.W.2d 694.

[2] All subsequent references to the Wisconsin Statutes are to the 1997–98 version, unless otherwise indicated.

enumerated circumstances permits records to be released under a lawful order of a court. The court of appeals held that nonprivileged information could be released by order of the court. We agree and therefore affirm the court of appeals' decision on this issue as well.

## Facts and Procedural History

¶ 3.  Sylvia Crawford was a patient at a Care Concepts' nursing home in Beloit. In October 1997 another nursing home resident, D.D., allegedly attacked and injured Crawford. Crawford brought a claim for damages against Care Concepts and its insurer, asserting that the injuries she sustained in the attack were caused by the negligence of the nursing home staff.

¶ 4.  The litigation proceeded to the discovery stage. Crawford served upon Care Concepts interrogatories and a request for the production of documents. Care Concepts refused to answer a number of these interrogatories. Those disputed interrogatories that are the subject of this review stated:

> INTERROGATORY NO. 4:  State whether or not resident, D.D., ever engaged in conduct towards an employee, of defendant, Care Concepts, Inc., a resident of defendant, Care Concepts Inc., or any other person which caused or reasonably could have been expected to cause physical pain or injury, illness, or other physical impairment.

> INTERROGATORY NO. 5:  If the answer to Interrogatory No. 4 is in the affirmative, for each such incident please provide the following information:

>> A.   The date such incident occurred.

B. The name and current address of any person against whom such action was taken.

C. State whether or not any records or reports of the incidents were prepared by defendant, Care Concepts, Inc., or on its behalf.

D. Describe in detail the nature of the incident.

INTERROGATORY NO. 6: State whether or not, in addition to any incident described in the answers to Interrogatories Nos. 4 and 5, D.D. ever engaged in any conduct the nature of which has a tendency to cause a disturbance.

INTERROGATORY NO. 7: If the answer to Interrogatory No. 6 is in the affirmative, for each such incident please provide the following information:

A. The date such incident occurred.

B. State whether or not any records or reports of the incident were prepared by defendant, Care Concepts, Inc., or on its behalf.

C. Describe in detail the nature of such incident.

¶ 5. Crawford also requested the production of all documents referred to or relied upon by Care Concepts in preparing its answers to these interrogatories.

¶ 6. Care Concepts argued that the information demanded by Crawford was confidential under Wis. Stat. § 146.82(1), and privileged under Wis. Stat. § 905.04(2). Crawford filed a motion in the circuit court to compel an answer. Rock County Circuit Court Judge Edwin C. Dahlberg granted Crawford's motion.

¶ 7.  Subsequently, Care Concepts petitioned the court of appeals for leave to appeal from the circuit court's order. The petition was granted. The court of appeals affirmed in part and reversed in part the order of the circuit court. *Crawford v. Care Concepts, Inc.*, 2000 WI App 59, 233 Wis. 2d 609, 608 N.W.2d 694. The court of appeals affirmed the circuit court order as to Interrogatories Nos. 4 and 5, finding that these questions sought information regarding what it characterized as assaultive conduct, and that the privilege in Wis. Stat. § 905.04(2) did not protect this type of information. *Id.* at ¶¶ 8–10.

¶ 8.  The court of appeals next concluded that Interrogatories Nos. 6 and 7 may reach privileged matters. As a result, the court ordered that the circuit court conduct an in camera examination of the requested materials and determine if any information was privileged. *Id.* at ¶¶ 10–11.

¶ 9.  Finally, the court of appeals concluded that Wis. Stat. § 146.82 did not bar the release of this information. The court held that although § 146.82 prohibits the release of patient health care records to unauthorized persons without the patient's consent, the statute permits such records to be released under a lawful order of a court. *Id.* at ¶ 12 n. 4. The court of appeals therefore concluded that nonprivileged material could be released by order of the circuit court.

¶ 10.  Care Concepts subsequently sought review by this court. We granted its petition and now affirm the decision of the court of appeals.

Standard of Review

¶ 11.  Rulings of the circuit court on issues of discovery are discretionary and will be upheld if they are

" 'consistent with the facts of record and established legal principles.' " *Ranft v. Lyons*, 163 Wis. 2d 282, 290, 471 N.W.2d 254 (Ct. App. 1991)(quoting *Lievrouw v. Roth*, 157 Wis. 2d 332, 358–59, 459 N.W.2d 850 (Ct. App. 1990)). Resolution of the issue before the court in this case requires an interpretation of Wis. Stats. § 905.04 and § 146.82. Statutory interpretation is a question of law, which this court reviews independently. *Steinberg v. Jensen*, 194 Wis. 2d 439, 458, 534 N.W.2d 361 (1995).

## Analysis

### I

¶ 12.  Care Concepts asserts that two statutes prohibit it from responding to Crawford's interrogatories and request for production of documents: Wis. Stats. § 146.82 and § 905.04. We begin our analysis with consideration of § 905.04, relating to the evidentiary privilege to not have disclosed confidential communications that occur between a patient and certain health care professionals.

¶ 13.  The applicability of Wis. Stat. § 905.04 arose while the parties engaged in pretrial discovery pursuant to the procedures set forth in Wis. Stat. ch. 804. The scope of pretrial discovery permitted under ch. 804 is broad, and discovery is not limited to admissible information. Wis. Stat. § 804.01(2). The requested information need only appear "reasonably calculated to lead to the discovery of admissible evidence." Wis. Stat. § 804.01(2)(a).[3] This breadth is essential because the purpose of discovery is identical to the purpose of our

---

[3] We note that Care Concepts does not dispute the relevance of the information sought by Crawford.

trial system — the ascertainment of truth. *State ex rel. Dudek v. Circuit Court*, 34 Wis. 2d 559, 576, 150 N.W.2d 387 (1967).

¶ 14.   The broad discovery rules encourage thorough investigation by the parties and foster the "revelation of the objective truth." *Id.* In our adversary system, pretrial discovery is "designed to formulate, define and narrow the issues to be tried, increase the chances for settlement, and give each party opportunity to fully inform himself [or herself] of the facts of the case and the evidence which may come out at trial." *Id.* Privileged matter presents a limited exception to the broad scope of discovery. Wis. Stat. § 804.01(2)(a). The privilege relied upon by Care Concepts in this case is the physician-patient[4] privilege. "[E]xceptions to the demand for every man's [and woman's] evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). Accordingly, statutory privileges are construed strictly and narrowly. *Steinberg*, 194 Wis. 2d at 464 (citing *Franzen v. Children's Hosp.*, 169 Wis. 2d 366, 386, 485 N.W.2d 603 (1992)).

¶ 15.   In applying Wis. Stat. § 905.04 to the facts of this case, we are mindful that this privilege must coexist in a judicial system seeking to find the truth, serve the interests of justice, and have all relevant information available for consideration by the fact-

---

[4] The privilege set forth in Wis. Stat. § 905.04(2)(a) protects communications between a patient and a variety of professionals, including registered nurses, psychologists, marriage and family therapists and others. In this opinion, the privilege will be referred to as the physician-patient privilege, as it is widely known.

finder. Within this framework, we turn to consider the requirements of § 905.04.

¶ 16. Wisconsin Stat. § 905.04(2) provides:

GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor.

¶ 17. The legislature has provided specific definitions for two terms employed in Wis. Stat. § 905.04(2) and relevant to our analysis in this case. First, "confidential" is defined in § 905.04(1)(b) as follows:

A communication or information is "confidential" if not intended to be disclosed to 3rd persons other than those present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication or information or persons who are participating in the diagnosis and treatment under the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor, including the members of the patient's family.

¶ 18. The court of appeals concluded, and we agree, that the word "confidential" in Wis. Stat. § 905.04(2) modifies both "communications made" and "information obtained or disseminated." *Crawford*, 2000 WI App. 59 at ¶ 7.

¶ 19. Second, the word "patient" is defined in Wis. Stat. § 905.04(1)(c) as an "individual. . .who consults with or is examined or interviewed by a physician . . ." or one of the other enumerated health care professionals. For the purposes of this analysis, we will assume that at all relevant times D.D. was a patient as defined by the statute.

¶ 20. The plain language of subsection (2) extends the physician-patient privilege to either "communications made or information obtained or disseminated" during professional contacts.[5] Care Concepts focuses upon the portion of Wis. Stat. § 906.04(2) which provides that "information" that is "obtained. . .for purposes of diagnosis or treatment" is privileged. Noting that in this case D.D. suffers from Alzhiemer's disease, Care Concepts contends that a health care provider's written observation or treatment notes regarding an Alzheimer patient's violent behavior is information obtained by or disseminated by the provider for purposes of the patient's diagnosis and

---

[5] Commentators agree with this conclusion.

> [The privileges in Wis. Stat. § 950.04] are broader than other privileges that are restricted to "communications," since they also extend a protective cover to "information obtained or disseminated" during the professional contacts. The communications or information must have been made, obtained or disseminated for purposes of diagnosing or treating the patient's physical, mental or emotional condition.

7 Daniel D. Blinka, *Wisconsin Practice* § 504.2, p. 212 (1991).

treatment. As a result, Care Concepts argues that such information is privileged.

¶ 21.  We disagree with Care Concepts' conclusion because in this case the required elements of Wis. Stat. § 905.04 are not satisfied. Pursuant to that statute, the privilege is available when there is:

(1)  A patient, as defined by Wis. Stat. § 905.04(1)(c).

(2)  Information that is obtained or disseminated for purposes of diagnosis or treatment.

(3)  Information that is confidential, as defined by Wis. Stat. § 905.04(1)(b).

(4)  Information obtained or disseminated among the individuals enumerated in the statute.

¶ 22.  The dispositive issue in this case is whether the information is confidential as defined by Wis. Stat. § 905.04(1)(b). This section sets forth the relationships that comprise the privilege. Therefore, to analyze whether this element is met, we must consider what information was sought by the interrogatories. Crawford's Interrogatories Nos. 4 and 5 requested information regarding whether D.D. engaged in assaultive conduct towards three classes of individuals: (1) "a resident of Care Concepts"; (2) "an employee, of defendant, Care Concepts"; or (3) "any other person." As to the first group, residents of Care Concepts, we find that the privilege does not protect information or records concerning assaults by D.D. against residents because that information is not confidential under the statute. Residents of the nursing home fall outside the network of relationships set forth in the privilege. Residents are third persons:

> other than those present to further the interest of the patient in the consultation, examination, or

> interview, or persons reasonably necessary for the transmission of the communication or information or persons who are participating in the diagnosis and treatment under the direction of [enumerated health care professionals]. . . .

Wis. Stat. § 905.04(1)(b). Thus, any assault made by D.D. against another resident was not confidential at its inception. Therefore, even if a health care professional documented this assaultive conduct in D.D.'s medical record for the purpose of diagnosis or treatment, the information is not privileged.

¶ 23.   As to the next two classes of individuals addressed in Interrogatories Nos. 4 and 5, employees or other individuals, we again conclude that the definition of confidential in Wis. Stat. § 905.04(1)(b) is not satisfied. Individuals falling within these two groups could potentially fall within the statutorily enumerated list of individuals among whom confidential information may flow. However, § 905.04(1)(b) also provides that information is "confidential" only if it is not *intended* to be disclosed to third persons. We conclude that an attack upon an employee or other person could not be undertaken with the intent that the act remain confidential under § 905.04.[6]

¶ 24.   Care Concepts argues that the statute does not define whose intent governs, the patient or the health care provider who documents observations of the patient's conduct. In its view, the statute permits the recorded impressions of a health care provider to be privileged based upon the provider's intention that it

---

[6] Conceivably, there may be a situation where a nursing home resident is encompassed within the class of individuals outlined in Wis. Stat. § 905.04(1)(b). Our analysis here includes this situation.

not be disclosed to third persons.[7] We conclude that the statute is ambiguous on this point. Therefore, we may consider the public policy purpose supporting the statute as a guide to discerning legislative intent.

¶ 25.    The public policy purpose of the statute is to facilitate communication between a patient and his or her health care providers. *Steinberg*, 194 Wis. 2d at 459. Applying the privilege to information concerning assaultive behavior observed at a residential facility by the health care provider does not advance candid communication between patient and health care provider. Plainly, the information may serve other purposes. The observation of violent or aggressive behavior by Alzheimer's patients such as D.D. may be information that is used in forming medical opinions and developing a course of treatment. Additionally, nursing homes are required to document the resident's condition pursuant to Wis. Admin. Code HFS § 132.45(5)(c) (Oct. 2000). However, we conclude that where a patient engages in assaultive conduct, such conduct is not intended to be confidential for the purposes of candid discussion of medical concerns, which is the purpose of the physician-patient privilege.

¶ 26.    Care Concepts believes that permitting disclosure of the requested information will have a chilling effect on free discussion between patients and health care providers, in part because the disclosure

---

[7] In support of this contention Care Concepts cites *State v. Locke*, 177 Wis. 2d 590, 604, 502 N.W.2d 891 (Ct. App. 1993), in which the court of appeals wrote: "The patient's objectively reasonable perceptions and expectations of the medical provider are the proper gauge of the scope of the sec. 905.04 privilege." The *Locke* decision does not resolve the issues in this case.

would be made without notice to the patient or an opportunity for the patient to object. However, a health care provider is authorized by Wis. Stat. § 905.04(3) to invoke the physician-patient privilege on behalf of the patient, and obligated by professional responsibility to do so.[8] As a result, a nonparty's interest in asserting the privilege may be advanced, as it has been in this case. Accordingly, we hold that the information sought by Crawford in Interrogatories Nos. 4 and 5 is not protected by the physician-patient privilege.

¶ 27. Crawford's Interrogatories Nos. 6 and 7 ask for information concerning whether D.D. ever engaged in conduct that had a tendency to cause a disturbance. For the reasons previously stated, we also conclude that the information sought by these questions is not confidential information pursuant to Wis. Stat. § 905.03(1)(b). As with assaultive conduct, creating a disturbance is not a communication intended to remain confidential within the policy of the physician-patient privilege. Accordingly, information concerning the creation of a disturbance is not privileged.

¶ 28. Further, as to Interrogatories Nos. 6 and 7, we agree with the court of appeals' conclusion that the information sought by these interrogatories is framed using fairly general language, raising the possibility that by answering these questions privileged information may be reached. We specifically adopt the court's conclusions at *Crawford*, 2000 WI App 59, ¶¶ 10–12, remanding this matter to the circuit court and allowing the court to order in camera production of the requested material and to make a determination of

---

[8] Under Wis. Admin. Code MED § 10.02(1)(n) (Dec. 1999) it is unprofessional conduct for a physician to willfully divulge a privileged communication or confidence.

whether any information produced by Care Concepts reaches privileged matters.

## II

¶ 29. The second statute relied upon by Care Concepts in its contention that it cannot answer Crawford's discovery demands is Wis. Stat. § 146.82(1). Section 146.82(1) provides in relevant part that "[a]ll patient health care records shall remain confidential. Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient." A "patient health care record" is defined in § 146.81(4) as records "related to the health of a patient prepared by or under the supervision of a health care provider. . . ." Crawford does not dispute that § 146.82 applies to the documentation by the nursing home of any aggressive conduct on the part of D.D. Therefore, for the purposes of this analysis, we will assume that § 146.82(1) applies.

¶ 30. The statute providing for the confidentiality of patient health care records is not an absolute bar to the release of information without the informed consent of the patient. Wisconsin Stat. § 146.82(2) provides for numerous exceptions from the rule set forth in subsection (1). The parties raise only one of these exceptions as applicable to the case at hand, § 146.82(2)(a)4. This provision states that under a lawful order of a court of record, patient health care records shall be released without informed consent.

¶ 31. Care Concepts contends that this court should interpret the "lawful order of a court" exception in Wis. Stat. § 146.82(2)(a)4 using the same method of analysis as applied in *In re Mental Condition of Billy Jo W.*, 182 Wis. 2d 616, 514 N.W.2d 707 (1994). Billy Jo W.

was civilly committed pursuant to the provisions of Wis. Stat. ch. 51, the mental health act. Wisconsin Stat. § 51.30(3) (1991–92) provided that records of court proceedings under ch. 51 are closed. The statute provided several exceptions to this closed record rule, including that " 'records may be released. . .pursuant to lawful order of the court which maintains the records.' " *Billy Jo W.*, 182 Wis. 2d at 626–27 n.1.

¶ 32.   The phrase "pursuant to lawful order of the court" was undefined in Wis. Stat. § 51.30(3), and .therefore in *Billy Jo W.* we examined § 51.30(4) for guidance in determining the meaning of this phrase because it appeared in both sections, "because the purpose of limiting access to treatment records and court records is similar, and because in sec. 51.30(4)(b) the legislature has enumerated 22 situations under which treatment records may be released." *Billy Jo W.*, 182 Wis. 2d at 635. We concluded that in enacting Wis. Stat. ch. 51, it was the intent of the legislature to allow the scope of access to civil commitment court records to be analogous to the scope of access to treatment records. *Id.* Accordingly, we concluded that " 'pursuant to lawful order of the court' in sec. 51.30(4)(b)4 allows access in situations distinct from but substantially similar to those contained in the enumerated exceptions." *Id.* at 637.

¶ 33.   Our method of analysis of Wis. Stat. § 51.30 in *Billy Jo W.* is not applicable to Wis. Stat. § 146.82. Section 51.30 is a specific statute relating to access to registration and treatment records for individuals committed pursuant to the provisions of Wis. Stat. ch. 51, while § 146.82 is a general statute governing patient health care records. Section 51.30 is part of ch. 51, which was created to "assure the provision of a full

range of treatment and rehabilitation services in the state for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse." Wis. Stat. § 51.001. As we noted in *Billy Jo W.*, there remains a stigma associated to mental illness and commitment to a mental institution and individuals are entitled to privacy about these matters. *Billy Jo W.*, 182 Wis. 2d at 632. D.D.'s privacy interest in care and treatment for Alzheimer's disease while she is a resident of a nursing home is also important, but distinguishable from the potential stigmatization that may occur as a result of a civil commitment under ch. 51. While § 51.30(4)(b)4 had to be read within the context of ch. 51, we need not apply the same analysis to § 146.82(2)(a)4. The reasoning of *Billy Jo W.*, therefore, is inapplicable in our analysis of § 146.82(2)(a)4. Consequently, for the exception in § 146.82(2)(a)4 to apply we need only determine whether the circuit court's order in this case was a "lawful order."

¶ 34. Care Concepts asserts that the circuit court's order compelling it to answer Crawford's interrogatories is not lawful because D.D. is not a party to this action, and she has not waived her right of privacy in her health care records. In support of its argument, Care Concepts points to the reasoning by the court of appeals in *Ambrose v. General Casualty Co.*, 156 Wis. 2d 306, 456 N.W.2d 642 (Ct. App. 1990).

¶ 35. In *Ambrose* the court of appeals interpreted Wis. Stat. § 146.82(2) (1987–88) and the medical records discovery rule, Wis. Stat. § 804.10(2) (1987–88). The medical records discovery rule in § 804.10(2) provided that the circuit court may order a claimant to give his or her consent and the right to inspect and copy hospital, medical or other records and

reports concerning the injuries claimed and the treatment thereof. *Ambrose,* 156 Wis. 2d at 309 n.1.

¶ 36. In *Ambrose,* plaintiff Patricia Ambrose brought a personal injury claim against the operator of a vehicle that had collided with Ambrose's vehicle. During the course of conducting discovery, the defendants learned that Ambrose had a pre-existing dormant condition. The defendants then sought an order from the circuit court to examine records relating to Ambrose's health before and after the accident that was the subject of the underlying litigation. *Id.* at 310.

¶ 37. The circuit court granted the defendants' motion and ordered the plaintiff to sign a release authorizing disclosure to the defendants' attorneys all health care records and reports, including records and reports that may have been subject to Ambrose's physician-patient privilege. *Id.* at 309. On appeal, Ambrose argued that the circuit court exceeded its discretion under the medical records discovery rule when it ordered her to "give *carte blanche* consent to [the defendants] to inspect and copy all of her health care records and reports, regardless of their confidential nature and regardless of the existence of a physician-patient privilege as to any of the records or reports." *Id.* at 311.

¶ 38. In a nonparty brief filed in support of the *Ambrose* defendants, the Civil Trial Counsel of Wisconsin, Inc. argued that the circuit court's order conformed to Wis. Stat. § 146.82(2)(a)4, the "lawful order of a court" exception also at issue in the case at hand. Ambrose did not dispute that Wis. Stat. § 804.10(2) provided an exception to the confidentiality of patient health care records set forth in § 146.82(1). *Id.* at 316. However, the court of appeals determined that the circuit court's order was not "lawful" because it was

beyond the court's discretionary authority under § 804.10(2). The court of appeals concluded that the circuit court had exceeded its discretion because the scope of the order would extinguish Ambrose's physician-patient privilege as to all health care records. As a result, the court of appeals determined it would not affirm the order of the circuit court based upon § 146.82(2)(a)4.

¶ 39. Here, the circuit court has not exceeded its discretionary authority. We have determined that the information regarding any assaultive conduct by D.D. is not protected by the physician-patient privilege. The interrogatories and related request for the production of documents at issue in this case do not demand the production of more than this unprivileged material. While it is correct that D.D. is not a party to this action, she is not immune from providing information that will resolve the controversy. "The well-accepted legal principle, a fundamental tenet of our modern legal system, is that the public has a right to every person's evidence except for those persons protected by a constitutional, common-law, or statutory privilege. This principle applies to all of us—even to the President of the United States." *State v. Gilbert*, 109 Wis. 2d 501, 505, 326 N.W.2d 744 (1982) (citing *United States v. Nixon*, 418 U.S. 683 (1974); *Unites States v. Fromme*, 405 F.Supp. 578 (E.D. Cal. 1975)) (footnote omitted).

¶ 40. Other rules reflect the principle cited in *Gilbert*. For example, pursuant to Wis. Stat. § 804.05(3)(b)4, "[a] nonparty deponent may be compelled by subpoena served within this state to give a deposition. . . ." In addition, Wis. Stat. § 905.01 states:

> Except as provided by or inherent or implicit in statute or in rules adopted by the supreme court or required by the constitution of the United States or Wisconsin, no person has a privilege to:
>
> (1) Refuse to be a witness; or
> (2) Refuse to disclose any matter; or
> (3) Refuse to produce any object or writing; or
> (4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

Further, Wis. Stat. § 804.09, relating to the production of documents and things and entry upon land for inspection and other purposes, provides: "(3) Persons not parties. This rule does not preclude an independent action against a person not a party for production of documents and things and permission to enter upon land."

¶ 41. These statutory provisions illustrate that a nonparty may be required to provide or produce evidence. In the present case, we find that because the information sought by Crawford is not privileged, the court's order granting Crawford's motion to compel was a lawful order under Wis. Stat. § 146.82(2)(a)4.

¶ 42. Finally, we are concerned, as was the court of appeals, that the nonparty's privacy rights be protected to the extent fully provided by law. Accordingly, in this case we order that all records produced by Care Concepts regarding D.D. in response to the interrogatories be initially examined in camera by the circuit court for a determination of whether any privileged information is potentially at risk of exposure.

██

¶ 43. We conclude that the circuit court properly issued its order compelling Care Concepts to answer the interrogatories filed by Crawford. The information

sought pertaining to aggressive or assaultive behavior by D.D. is not protected by the physician-patient privilege. Additionally, the order of the circuit court on this matter was a lawful order under Wis. Stat. § 146.82(2)(a)4.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause remanded to the circuit court.